Compiler

## IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM, )
       )   **CRIMINAL CASE NO. CM1289-11**
      vs. )
       )   **DECISION AND ORDER**
ISAIKY NETH, )
       )
          Defendant. )
       )

### INTRODUCTION

This matter came before the Honorable James L. Canto II on Defendant's motion to suppress, filed September 24, 2012. Oral arguments were heard on November 9 and 30, 2012. Assistant Attorney General Gabrielle L. Rossi, Esq. appeared on behalf of the Government and Assistant Public Defender Suresh Sampath, Esq. represented Defendant. Having considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order.

### BACKGROUND

Defendant is charged with driving under the influence of alcohol and driving without a license based upon the following events. On December 26, 2011 at 6:25 a.m., Port Authority Police Officers Jonathan J. Quenga and J.R. Quichocho responded to a phone call that a drunk driver was heading toward Asan in a green Mitsubishi Lancer with license plate number ASA3296. (Testimony of Jonathan J. Quenga, Record Log at 11:34, Nov. 9, 2012.) At 7:00 a.m., the Port Officers found the green Mitsubishi Lancer parked in Asan with a passenger asleep inside. *Id.* The Port Officers woke the passenger and were informed that Defendant was the driver and that he was inside the adjacent house. *Id.* The Port Officers knocked on the house door and were greeted by a man who identified Defendant as the person sleeping on the floor inside the open door. *Id.*

While the Port Officers were at the door, a Mr. Yen Neth (Defendant's uncle) approached and identified himself as the owner of the home before he went outside to check on the green Mitsubishi Lancer. (Testimony of Yen Neth, Record Log at 10:48, Nov. 30, 2012.)

Mr. Yen Neth did not wake Defendant when the Port Officers asked him to do so and the Officers called out Defendant's name in an attempt to wake him. *Id.* Port Officer Quenga estimated that it took about fifteen (15) minutes for the Officers to obtain permission to enter the home from a male and female who also identified themselves as owners of the home. (Testimony of Jonathan J. Quenga, Record Log at 11:34, Nov. 9, 2012.) The Port Officers then woke Defendant and observed he had bloodshot eyes, slurred speech and could not maintain his balance. (Testimony of Eric J. Salas, Record Log at 11:45, Nov. 9, 2012.)

During the next five (5) minutes, the Port Officers brought Defendant outside and placed him in handcuffs while they contacted the Guam Police Department. (Testimony of Jonathan J. Quenga, Record Log at 11:34, Nov. 9, 2012.) At 7:27 a.m., Guam Police Officer L.C. Villagomez arrived and saw Defendant lying prone in handcuffs. (Testimony of L.C. Villagomez, Record Log at 11:52, Nov. 9, 2012.) Officer Villagomez observed that Defendant had bloodshot, watery eyes, slurred his speech and smelled of alcohol. *Id.* When Defendant refused to participate in a standardized field sobriety test, Officer Villagomez transported him to the police station where he signed a written waiver of his rights before he performed a breath test and made statements about drinking and driving. *Id.*

On September 24, 2012 Defendant moved to suppress all evidence on the following grounds: 1) the anonymous tip was not reliable and did not give the Port Officers reasonable suspicion to detain Defendant; 2) the Port Officers entered the home where Defendant slept without a warrant or valid warrant exception; and 3) the investigative detention lasted longer than fifteen (15) minutes in violation of 8 GCA § 30.30.

The Government opposes suppression on the bases that: 1) the anonymous tip was corroborated with reliable evidence; 2) the Port Officers obtained consent to enter the home where Defendant slept; 3) Defendant was arrested before 15 minutes of detention; 4) probable cause to arrest appeared before 15 minutes of alleged detention; 5) suppression should be limited to evidence obtained after 15 minutes of detention and before arrest; and 6) evidence obtained after the voluntary waiver of rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) is attenuated from an unreasonable detention and thus admissible.

# DISCUSSION

## 1. Anonymous Tip of Drunk Driving

The Fourth Amendment permits brief investigative detentions that are based upon a reasonable suspicion of illegal conduct. *People v. Johnson*, 1997 Guam 9 ¶ 4 (*citing Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968)). A reasonable suspicion is dependent upon the totality of the circumstances, including the quantity and quality of facts observed by police or reported to police. *Id.* at ¶ 6 (*quoting Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990)). "[A] person has been seized under the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *People v. Cundiff*, 2006 Guam 12 ¶ 21 (*quoting United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980)).

In this case, Port Officers woke Defendant in his home to question him about alleged drunk driving. Under these circumstances, a reasonable person would not feel that he is free to leave and Defendant was seized under the Fourth Amendment. For this reason, the seizure was lawful only if the totality of the circumstances furnished the Officers with a reasonable suspicion that Defendant drove while under the influence of alcohol.

An anonymous report of illegal activity seldom demonstrates an informant's basis of knowledge or veracity and it may have a relatively low degree of reliability. *White*, 496 U.S. at 329-330. For this reason, an unreliable anonymous tip must be corroborated by independent police investigation that exhibits sufficient indicia of reliability to provide reasonable suspicion to justify an investigatory detention under the Fourth Amendment. *Id.* at 326-331.

In this case, Port Officers responded to a phone call that a drunk driver was heading toward Asan in a green Mitsubishi Lancer with license plate number ASA3296. This anonymous tip has a relatively low degree of reliability because it does not demonstrate how the caller witnessed the alleged drunk driving; what specific driving behavior or observations of the drive led the tipster to the conclusion of "drunk driving"; and it does not demonstrate how the caller may be trusted or held accountable. The Port Officers did corroborate certain details of the tip when they found a green Mitsubishi Lancer with license plate number ASA3296 parked

in Asan and discovered that its driver was sleeping inside the adjacent house. Yet the Officers failed to corroborate any erratic driving, intoxication or other criminal activity related to the tip of drunk driving before they detained Defendant in his home. For this reason, the Port Officers may not have sufficiently corroborated the unreliable tip in order to justify the detention.

However, the U.S. Supreme Court recognizes circumstances where, "the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. … [F]or example, … a report of a person carrying a bomb." *Florida v. J.L.*, 529 U.S. 266, 273, 120 S.Ct. 1375, 1380, 146 L.Ed.2d 254 (2000). Guam law does not detail when the danger alleged in an anonymous tip is so great as to justify a search without a showing of reliability, but some jurisdictions compare the example of a bomb report in *J.L.*, 529 U.S. 266, to the anonymous report of erratic or drunk driving.[1] The exigent nature of erratic driving may be compared to a bomb because, "with drunk driving, … a wait-and-see approach may prove fatal. Drunk driving is always dangerous, as it is occurring." *Virginia v. Harris*, 130 S.Ct. 10, 11, 175 L.Ed.2d 322 (2009) (Roberts, J., dissenting from denial of certiorari). For this reason, a majority of courts allow the police to pull over and investigate an alleged drunk driver on the basis of an anonymous tip without further corroboration of erratic driving. *Id.* at 11-12.

In *U.S. v. Wheat*, 278 F.3d 722 (8th Cir. 2001), the Eighth Circuit surveyed state and federal authorities and held that an anonymous tip of drunk driving is reliable enough to permit a traffic stop without police corroboration of erratic or illegal driving under the following totality of circumstances.[2] First, the tip must include sufficient innocent details to correctly identify the alleged vehicle. *Id.* at 731-732. Second, the tip is more reliable the faster an officer discovers and identifies the alleged vehicle. *Id.* Third, the tip must support an inference that the tipster witnessed an actual traffic violation that compels an immediate stop. *Id.* at 732. *See also*

---

[1] *See State v. Boyea*, 765 A.2d 862, 867 (Vt. 2000) ("Indeed, a drunk driver is not at all unlike a 'bomb', and a mobile one at that.").

[2] Many courts have adopted the seminal *Wheat* analysis on drunk driver tips without police observation of illegal driving, and this Court finds the analysis persuasive and applicable to the facts at bar. *See e.g. People v. Wells*, 136 P.3d 810, 814-816 (Cal. 2006); *State v. Prendergast*, 83 P.3d 714, 722-723 (Hawai'i 2004); *Bloomingdale v. State*, 842 A.2d 1212, 1219-1222 (Del. 2004); *State v. Golotta*, 837 A.2d 359, 364-369 (N.J. 2003).

*Wheat*, 278 F.3d at 732 n. 8 ("[T]he moving violation or violations alleged must suggest real exigency. An allegation of erratic driving will generally pass this test."). Fourth, and most important, an anonymous tip of drunk driving is most reliable when the criminal activity is contemporaneously described as it is witnessed. *Id*. at 733-735.

When these circumstances are present, the *Wheat* Court reasoned that the police may stop the alleged vehicle without further corroboration because the substantial government interest in stopping an extremely mobile and potentially highly dangerous suspect outweighs the liberty interest in proceeding unmolested along public highways. *Id*. at 736-737 (*quoting Terry*, 392 U.S. at 20-21). The *Wheat* Court also distinguished cases where police corroboration of erratic driving was required because the particular emergency ended or the police discovered and stopped a suspect after he pulled into his private driveway. *Id*. at 730-731 (*citing Commonwealth v. Lubiejewski*, 729 N.E.2d 288, 292 (Mass. App. Ct. 2000); *State v. Boyle*, 793 So.2d 1281, 1284-85 (La. Ct. App. 2001)).

In this case, the anonymous tip included sufficient innocent details to correctly identify the alleged vehicle, but the Port Officers discovered the vehicle parked in Asan more than thirty (30) minutes after the call and with the alleged driver asleep in his home. The alleged emergency was over, and the Officers needed to conduct more independent police work in order to justify an investigatory detention in the privacy of Defendant's home.[3] Most importantly, the anonymous tip did not include any description of an actual traffic violation to support an inference that the caller witnessed drunk or erratic driving. The tip did not even allege erratic driving, a low burden established in *Wheat*, 278 F.3d at 732 n.8. The caller merely asserted the bare allegation that a drunk driver was headed toward Asan in a particular vehicle.[4] Indeed, the Government failed to offer any evidence about the caller or call itself. The only evidence the Government put before this Court was Officer Quenga's testimony that he was directed by the

---

[3] *See Wheat*, 278 F.3d at 736-737 (a traffic stop is considerably less invasive than a public hands-on frisk and more easily outweighed by the substantial government interest in stopping a potential emergency).

[4] *See J.L.* 529 U.S. at 272 ("The reasonable suspicion [to conduct a stop and frisk] ... requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.").

dispatcher to respond to a call about a "reported drunk driver." (Testimony of Jonathan J. Quenga, Record Log at 11:34, Nov. 9, 2012.). The Government put forth no evidence at all regarding the details of the anonymous tip, such as some observation of erratic driving, which might support a reasonable and articulable suspicion legally justifying detention. Instead, the only evidence made available for the Court to consider was Officer Quenga's testimony that he was directed to respond to a complaint which he characterized by a single conclusory statement of a "reported drunk driving," which is ultimately insufficient to support reasonable suspicion attained via an anonymous tip. See *Wheat*, 278 F.3d at 726-737 (8th Cir. 2001) ([at 732 & n.8:] "The tip must also contain a sufficient quantity of information to support an inference that the tipster has witnessed an actual traffic violation that compels and immediate stop…An allegation of erratic driving will generally pass this test").

This is significant because without any reliable description of criminal activity or any police observation of criminal activity, an objective officer cannot form the reasonable suspicion necessary to justify an investigatory traffic stop. Stated another way, the Port Officers in this case detained Defendant in his home merely on the basis of an unsupported conclusion that he is a "drunk driver," accompanied by innocent details that identified his car outside and himself as the driver who parked it there, but with no information from the tip regarding his actual demeanor or driving behavior. Under the totality of these circumstances, the Port Officers did not possess a reasonable suspicion of drunk driving and they impermissibly detained Defendant when they woke him up in his home to ask him about drunk driving. For this reason, the investigatory detention violated Defendant's Fourth Amendment freedom against unreasonable searches and seizures.

## 2. The Exclusionary Remedy

When the Fourth Amendment is violated by an unlawful seizure or investigative detention, evidence obtained during the detention must be suppressed pursuant to the exclusionary rule. *See e.g. Cundiff*, 2006 Guam 12 at ¶ 51; *Terry*, 392 U.S. at 13-15. Evidence that is obtained during or derived from an unlawful detention must be suppressed pursuant to

the fruit of the poisonous tree doctrine. *Cundiff*, 2006 Guam 12 at ¶ 41 (*citing Wong Sun v. United States*, 371 U.S. 471 (1963); *People v. Santos*, 2003 Guam 1 ¶ 64).[5]

In order to suppress evidence under the fruit of the poisonous tree doctrine, the Court must determine, "whether the challenged evidence was come at by exploitation of the initial illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Cundiff*, 2006 Guam 12 at ¶ 41; *Santos*, 2003 Guam 1 at ¶ 65 (*quoting Segura v. United States*, 468 U.S. 796, 805-805, 104 S.Ct. 3380, 3385 (1984)). *See also Segura*, 468 U.S. at 815 ("[E]vidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence."). The coercive effect of an illegal seizure may attenuate and dissipate with the passage of time. *Santos*, 2003 Guam 1 at ¶ 65 (*quoting Oregon v. Elstad*, 470 U.S. 298, 311-312, 105 S.Ct 1285, 1294 (1985)).

In this case, Defendant was unlawfully seized and placed in handcuffs by the Port Police Officers. Defendant was thereafter transported to the police station where he waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), performed a breath test, and made statements about drinking and driving. The short passage of time between the illegal seizure and the custodial statements by itself does not likely dissipate and purge the taint of the illegality. *See Brown v. Illinois*, 422 U.S. 590, 604-605, 95 S.Ct. 2254, 2262 (1975) (statement separated from illegal arrest by less than two hours does not purge the taint of illegal arrest). Furthermore, the *Miranda* warning alone does not purge the taint of the illegal seizure. *Id*. at 601-603. In order to determine whether Defendant's statements are purged of the taint of the illegal seizure, the Court should consider the totality of the circumstances, including: 1) the temporal proximity between the illegal detention and the statements; 2) the presence of intervening circumstances;

---

[5] *See also Nix v. Williams*, 467 U.S. 431, 442-443, 104 S.Ct. 2501, 2508 (1984) ("The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. This Court has accepted the argument that the way to ensure such protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes. On this rationale, the prosecution is not to be put in a better position than it would have been in if no illegality had transpired.").

and 3) particularly, the purpose and flagrance of the illegal conduct. *People v. Chargualaf*, 2001 Guam 1 ¶ 53 (*citing Brown*, 422 U.S. at 603-604).

As discussed above, the temporal proximity between the illegal detention and custodial statements does not purge the taint of illegality. Furthermore, there are no intervening circumstances to purge the taint of the illegal detention. *See Johnson v. Louisiana*, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626 (1972) (lineup identification is purged of illegal arrest when conducted with counsel and after magistrate hearing to advise rights and commit under bail). Finally, it is particularly important here that the illegal seizure had no basis in reasonable suspicion and may have been conducted with an illegal purpose or as flagrant illegal conduct. *See* discussion, *supra,* at 3-6. The Port Police Officers seized Defendant before they could form a reasonable suspicion of illegal activity. The Defendant exhibited signs of intoxication after he was illegally seized. The police could not confirm the suspicion that Defendant was intoxicated while driving until he was arrested and made custodial statements that he drank and then drove.

In sum, Defendant was detained without reasonable suspicion and confessed without any intervening event of significance. To admit Defendant's confession in this case, "would allow law enforcement officers to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the procedural safeguards of the Fifth." *Dunaway v. New York*, 442 U.S. 200, 219, 99 S.Ct. 2248, 2260 (1979) (internal quotations omitted). For all of these reasons, the custodial statements are not purged of the primary taint of the illegal seizure and they shall be excluded under the fruit of the poisonous tree doctrine. *See Cundiff*, 2006 Guam 12 at ¶ 41.

///

///

///

## CONCLUSION

Based upon the foregoing, Defendant's motion to suppress is hereby GRANTED and all evidence obtained as a result of the unlawful seizure, including the evidence obtained while Defendant was in custody, shall not be admissible.

SO ORDERED this __15TH__ day of February, 2013.


**HON. JAMES L. CANTO II**
**Judge, Superior Court of Guam**

James R. Borja
Deputy Clerk, Superior Court of Guam

FEB 1 2013